United States District Court
Eastern District of New York
-----------------------------------------------------------------x
Tahir Alston,

                    Plaintiff,

      -v-

The City of New York, New York City Police Department ("NYPD") Officer Eliseo Torres (Shield No. 29629), NYPD Officer John Doe 1, NYPD Detective John Doe 2 (the names "John Doe" being fictitious as the true names, ranks and shield numbers are not known), in their individual capacities,

                    Defendants.
-----------------------------------------------------------------x

**Complaint and Demand for a Jury Trial**

16-CV- 322

Plaintiff Tahir Alston, through his attorney Robert M. Quackenbush of Rankin & Taylor, PLLC, as and for his complaint, does hereby state and allege:

### Preliminary Statement

1. This is a civil rights action brought to vindicate plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983.

2. Plaintiff Tahir Alston's right to be free from unreasonable seizures was violated when officials of the New York City Police Department ("NYPD") used gratuitous, excessive force against him on June 20, 2014 causing Mr. Alston to endure, *inter alia*, bruising, scrapes, and swelling on and around his face and upper body along with extreme irritation of the eyes and airways associated with the use of pepperspray at close range. By reason of defendants' use of unreasonable force, Mr. Alston was deprived of his rights secured by the Fourth and Fourteenth Amendments.

3. Mr. Alston also seeks an award of compensatory and punitive damages and attorneys' fees.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the Constitution of the United States.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that Mr. Alston's claim arose in the County of Kings in the State of New York, within the confines of this judicial district.

6. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## Parties

7. Plaintiff Tahir Alston was at all times relevant to this action a resident of the County of Kings in the State of New York.

8. Defendant The City of New York ("City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

9. Defendants NYPD Officer ("P.O.") Eliseo Torres (Shield No. 29629), P.O. John Doe 1, and NYPD Detective ("Det.") John Doe 2 (referred to collectively as the "officer-defendants") are and were at all times relevant herein, officers, employees and agents of the NYPD.

10. The officer-defendants are being sued herein in their individual capacities.

11. The true and complete name, rank, and shield number of defendants P.O. Doe 1 and Det. Doe 2 are not currently known to Mr. Alston. However, they were employees or agents of the

NYPD on the date of the incident, June 20, 2014. Accordingly, they may be entitled to representation in this action by the New York City Law Department ("Law Department") upon their requests, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that Mr. Alston intends to name said officers as defendants in an amended pleading once their true and complete names, ranks, and shield numbers become known and (b) that the Law Department should immediately begin preparing their defense(s) in this action.

12. At all times relevant herein, the officer-defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

13. The officer-defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of Mr. Alston's rights.

14. At all relevant times, the officer-defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

## Statement of Facts

15. The use of force described herein occurred on June 20, 2014 at approximately 5:30 p.m. and thereafter in the vicinity of the Ralph Avenue "C" train station in Brooklyn, New York.

16. On the date and approximate time above, Mr. Alston was standing near one of the turnstiles waiting for his girlfriend to arrive on an incoming train.

17. P.O. Torres approached Mr. Alston and told him to move away from the turnstiles.

18. Mr. Alston complied and moved away from the turnstiles.

19. Because he was told not to stand near the turnstiles, Mr. Alston continued to wait for his girlfriend by sitting on the stairs leading out of the train station.

20. P.O. Torres ordered Mr. Alston to leave the train station.

21. Mr. Alston complied and walked up the stairs and out of the train station.

22. P.O. Torres followed Mr. Alston up the stairs and onto the public sidewalk.

23. Once on the public sidewalk, P.O Torres told Mr. Alston that he was not permitted to be anywhere on that entire block.

24. In response, Mr. Alston attempted to take a picture of P.O. Torres and/or P.O. Torres' badge.

25. P.O. Torres walked back down the stairs and into the train station. Shortly thereafter, P.O. Torres emerged from the train station, accompanied by P.O. Doe 1.

26. The officers approached Mr. Alston (who, by that time, was standing by the nearby B47 bus stop), and, without warning, P.O. Torres applied pepperspray to Mr. Alston's face.

27. When Mr. Alston tried to protect his eyes from additional pepperspray from hitting them, the officers put Mr. Alston in a headlock and took him to the ground.

28. While laying chest-down on the pavement, Mr. Alston attempted to put his hands behind his back, but this process was foreseeably delayed by the officers who persisted in keeping their weight on Mr. Alston's back, thereby pinning his hands beneath his body.

29. The officers put Mr. Alston into the back of a police vehicle.

4

30. Because the officers had not treated Mr. Alston's pepperspray injuries, because of the hot weather, and because the officers put Mr. Alston in a vehicle without any ventilation, Mr. Alston had difficulty breathing and began yelling for medical attention.

31. Instead of getting medical attention for Mr. Alston, the officers mocked him.

32. Because he needed fresh air, Mr. Alston opened the car door and stepped out after several minutes struggling to breath inside the car.

33. Apparently believing Mr. Alston was attempting to escape, Det. Doe 2 tackled Mr. Alston to the ground and fastened the handcuffs behind Mr. Alston's back.

34. Mr. Alston did resist Det. Doe 2.

35. Despite the arrest situation then being stable with Mr. Alston in Det. Doe 2's complete control, P.O. Torres ran from across the street, punched Mr. Alston in the face (causing, *inter alia*, a black eye that eventually made it impossible for NYPD officials to scan his iris at Central Booking), kicked him multiple times, and put his foot on Mr. Alston's neck.

36. While in custody, Mr. Alston was taken Kings County Hospital Center to treat his injuries.

37. Upon his release from custody, Mr. Alston sought and received follow-up medical care related to his physical injuries.

**Claim for Relief**
**Unreasonable Seizure – Excessive Force**
**Fourth and Fourteenth Amendments Through 42 U.S.C. § 1983**
(*Against all defendants*)

38. Mr. Alston repeats and realleges each and every allegation contained in paragraphs above with the same force and effect as if fully set forth herein.

39. The level of force employed by the officer-defendants was objectively unreasonable and they failed to intervene to prevent each other from using excessive force, all in violation of Mr.

5

Alston's constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

40. At all times material to this complaint, defendant City had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

41. At all times material to this complaint, defendant City failed to properly train, screen, supervise, or discipline its employees and police officers, including the officer-defendants, and failed to inform the officer-defendants' supervisors of their need to train, screen, supervise or discipline the officer-defendants.

42. The City's policies, practices, customs and usages, and the failure to properly train, screen, supervise, or discipline, were a direct and proximate cause of the unconstitutional conduct alleged herein, causing injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

43. The City's policies, practices, customs and usages with regards to using force upon handcuffed, restrained, or otherwise compliant arrestees, and the failure to properly train, screen, supervise, or discipline regarding same, are demonstrated in, *inter alia*, the following civil rights lawsuits alleging similar conduct by NYPD employees: *Poe v. City of New York*, 13-CV-5258 (ERK) (RER) (E.D.N.Y.) (compliant arrestee handcuffed in a manner that caused bruising and nerve damage); *Shortt v. City of New York*, 13-CV-6145 (NG) (SMG) (E.D.N.Y.) (same); *Shamir v. City of New York*, 13-CV-5652 (CM) (S.D.N.Y.), on appeal, 14-3606 (2d Cir.) (same); *Levy v. City of New York*, 10-CV-5295 (WFK) (JMA) (E.D.N.Y.) (same); *Lambert v. City of New York*, 153046/2012 (Sup. Ct., New York County) (same);

*Tyler v. City of New York*, 12-CV-1975 (JBW) (CLP) (E.D.N.Y.) (in retaliation for speech protected by the First Amendment, two NYPD officers sweep the legs out from under an already-handcuffed arrestee, causing the top of his head to collide with the pavement, causing a substantial laceration which required nearly a dozen stitches and staples); *McKie v. City of New York*, 12-CV-2070 (JG) (VVP) (E.D.N.Y.) (NYPD officers use pepper spray upon an individual who was under arrest, was prone and compliant with officers commands, and whose arm was pinned beneath his and the officers' combined weights during the entire use of force); *Gad Alla v. City of New York*, 11-CV-892 (FB) (RLM) (E.D.N.Y.) (NYPD officer uses catastrophic force to the side of an arrestee's head, even though the arrestee was compliant and prone, and even though multiple officers had their hands on his back, controlling his movements); *Thompson v. City of New York*, 10-CV-3603 (ARR) (SMG) (E.D.N.Y.) (while arrestee is handcuffed and compliant, NYPD officers use their Asp, or expandable metal baton, to beat plaintiff and also apply pepper spray to his face without cause); *Zabala v. City of New York*, 3771/2010 (Sup. Ct., Kings Co.) (NYPD officers severely beat and TASER a compliant, prone, bloodied and semi-conscious suspect after he had surrendered and was surrounded on all sides by police officers); *Ashe v. City of New York*, 09-CV-9696 (GBD) (THK) (S.D.N.Y.) (NYPD officers beat and use pepper spray upon two arrestees even though they were both already handcuffed and compliant); *Moise v. City of New York*, 09-CV-9855 (DC) (JLC) (S.D.N.Y.) (NYPD officers beat and use pepper spray upon a compliant arrestee while he was already in handcuffs).

44. As a result of the aforementioned acts and omissions of the officer-defendants and their municipal employer, Mr. Alston was subjected to unreasonably excessive force, causing injuries.

## **Jury Demand**

45. Mr. Alston demands a trial by jury in this action on each and every one of his damage claims.

*Wherefore*, Mr. Alston demands judgment against the defendants individually and jointly and prays for relief as follows:

   a. That he be compensated for violation of his constitutional rights, pain, and suffering; and

   b. That he be awarded punitive damages against the officer-defendants; and

   c. That he be compensated for attorneys' fees and the costs and disbursements of this action; and

   d. For such other further and different relief as to the Court may seem just and proper.

Dated:   New York, New York
         January 19, 2016

Respectfully submitted,

By: /s/ Robert M. Quackenbush

Robert M. Quackenbush
Rankin & Taylor, PLLC
*Attorneys for the Plaintiff*
11 Park Place, Suite 914
New York, New York 10007
t: 212-226-4507
f: 212-658-9480
e: robert@drmtlaw.com